

745 Fifth Avenue, 5th Floor, New York, NY 10151
T. 646-770-7445  F. 646-417-7997

GROSSMANLLP.COM

Writer's Direct Dial No.
(646) 770-7445

Writer's Email Address
jgrossman@grossmanllp.com

May 2, 2025

**<u>VIA ECF</u>**

Honorable Christine P. O'Hearn
United States District Judge for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room 6050
Camden, New Jersey  08101

> **Re:   *Artwide International H.K. Limited v. Foster et al.*,**
> **<u>Case 1:22-cv-06417 (CPO) (EAP)</u>**

Dear Judge O'Hearn,

We write on Plaintiff's behalf under the Court's April 3, 2025, Order (Dkt. 44) directing Plaintiff to detail the damages it has incurred over the past seventeen months attempting to enforce its nearly $200,000 Judgment (Dkt. 19) against Defendant Andrew Foster ("Foster"), and to set forth its proposed sanctions against Foster and his father, Abraham Foster (collectively, the "Foster Parties").  For the following reasons, Plaintiff respectfully requests that the Court:  (a) award Plaintiff its legal fees and costs, plus additional damages by applying to that amount a multiplier of at least two; (b) hold the Foster parties in contempt of Court; and (c) issue a bench warrant for Foster's arrest.

Foster's ongoing refusal to participate in any way in this litigation or pay any heed to the Court's Orders—all while publicly and ostentatiously flaunting his wealth—is amply demonstrated in the record.  (*See, e.g.*, Dkt. 6-1 at 4; Dkt. 16; Dkt. 26 at 1).  And the record shows that Foster's father has abetted his son's conduct by obstructing Plaintiff's efforts to serve various legal documents, including by "reject[ing]" packages mailed to his residence, and by ignoring subpoenas for his own documents and deposition testimony.  (*See* Dkt. 22 ¶¶ 4, 5.)  After the Foster Parties flouted the Court's Orders to comply with Plaintiff's postjudgment discovery demands and attend two show-cause hearings, the Court warned it would recommend sanctions against them, including a bench warrant against Foster.  (*See* Dkt. 30, 35, 37, 40, 43.)  Undeterred, the Foster Parties still failed to respond to the Court's March 17, 2025, deadline.  (*See* Dkt. 41, 42.)

Since entry of the Judgment on November 29, 2023, Plaintiff has undertaken comprehensive enforcement efforts, including extensive online research attempting to locate Mr. Foster; drafting and serving post-judgment discovery requests; drafting affidavits and requesting writs of execution; drafting and filing motion for contempt conference, for sanctions, and to

Hon. Christine P. O'Hearn
May 2, 2025
Page 2 of 3

compel (the "Motion"); preparing for and attending two hearings and delivering oral argument on the Motion; drafting and filing two Court-ordered letters; and corresponding with law enforcement and producing documents in connection with the criminal investigation into Defendants' conduct. (*See* Dkt. 22 ¶¶ 1–3, 39; Dkt. 23–24; Dkt. 25–28; Dkt. 41.) All in all, Plaintiff has paid $59,594.12 in legal fees and $2,783.60 in expenses and disbursements in connection with this matter. (*See* Melemedjian de Rus Declaration ¶ 6.) And, since November 29, 2023, an additional approximately $50,000 in attorney's fees and disbursements has been incurred but not yet paid. (*See id*.)

We respectfully submit that the Court should sanction Foster by, at bare minimum, awarding Plaintiff its attorney's fees and costs. Such relief is appropriate and routinely granted where, as here, a prevailing party has been "unable to recover on its judgment" and forced to "incur[] even more expenses and attorney's fees by having to . . . seek judicial relief" due to an opposing party's "repeated attempts to flout [the] Court's Orders," "prolong[ing] th[e] case by several years." *Edmondson v. Lilliston Ford, Inc.*, No. CV 13-7704 (RMB/MJS), 2023 WL 6890843 (D.N.J. Oct. 19, 2023), *aff'd,* No. 23-2938, 2024 WL 5155557 (3d Cir. Dec. 18, 2024) (awarding $88,000 in attorney's fees).

The Court should also hold the Foster Parties in civil contempt, where all elements for civil contempt are found here: Magistrate Judge Pascal issued two Orders on June 4 and June 27, 2025, requiring the Foster Parties' in-person appearance at show-cause hearings (the "Show-Cause Orders," Dkt. 30, 37); each of the Foster Parties received each of the Show-Cause Orders by certified mail and simultaneously by regular mail (Dkt. 31, 39); and the Foster Parties disobeyed those orders by failing to appear for either hearing (Dkt. 35, 40).[1] And clearly, court Orders alone, without any finding of contempt, have proven insufficient to effect the Foster Parties' compliance; some greater incentive is required.[2] A finding of civil contempt is appropriate under these circumstances.[3]

And the Court should then use its "broad discretion to fashion an appropriate civil contempt remedy" to drive home to the Foster Parties the importance—especially in this day and age—of heeding the directives of a federal court. *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70

---

[1] *See Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995) ("To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order.")

[2] *See Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991) ("Civil contempt is designed to benefit the injured plaintiff by ensuring compliance with the court's orders and providing remedial damages to parties injured by the contemnor.").

[3] *See, e.g.*, *Laborers Loc. Union Nos. 472 & 172 v. Lucas Constr. Grp., Inc.*, No. CV 23-02825 (GC), 2024 WL 3568735 (D.N.J. July 29, 2024) (holding respondent in civil contempt for deliberately violating the court's Orders by failing to comply with post-judgment discovery requirements, despite receiving multiple opportunities to do so); *see also Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) (ruling that civil contempt may be imposed against nonparties who knowingly disobeyed a court order or "aid[ed] and abet[ted] the [person who violated an order] or is legally identified with him").

Hon. Christine P. O'Hearn
May 2, 2025
Page 3 of 3

(3d Cir. 1991).  Foster has now spent more than two years (and his father more than one) flouting the judicial process, including direct commands from two Federal Judges, yet clearly still has not learned any lesson.   Given his lengthy track record of contumaciousness, the Court should issue a bench warrant for Foster's arrest to ensure his compliance with postjudgment discovery obligations—and prevent him from victimizing others in the meantime.  *See id.* ("In a civil proceeding, a court may order a contemnor imprisoned until such time as the contemnor complies with the court's directives."); *Victory's Dawn, Inc. v. Clemons*, No. CV219744MASTJB, 2022 WL 3402491, at *6 n.9 (D.N.J. Aug. 12, 2022) (cautioning Defendants that imprisonment "for a fixed term, provided that the contemnor has the option of earlier release if he complies" may be imposed as a sanction for failure to follow court Orders).

Further, the Court should use a finding of contempt as an independent basis for imposing monetary sanctions on Foster.  *See Ne. Women's Ctr.*, 939 F.2d at 70. ("[T]he court can also impose a fine payable to an aggrieved party as compensation for damages sustained as a result of the contemnor's conduct.")  In light of his ongoing willful disregard for the judicial system, Foster should be sanctioned by applying a multiplier of at least two to Plaintiff's attorney's fees and costs award, for a total of at least approximately $226,000. *Cf. Axact (PVT), Ltd. v. Student Network Res., Inc.*, No. CIV.A. 07-5491 (FLW), 2008 WL 4754907, at *5 (D.N.J. Oct. 22, 2008) (imposing damages exceeding 250 times the compensatory amount due to the defendant's reckless disregard for those victimized by it actions, which "continues unabated").  Added damages calculated in this manner are both reasonable and necessary to proportionately punish the Foster Parties' prolonged contempt and to ensure meaningful deterrence against future misconduct.

For these reasons, Plaintiff respectfully requests that the Court: (a) sanction Foster by awarding Plaintiff its attorney's fees and costs of approximately $113,000, and imposing additional damages by applying a multiplier of at least two to that amount, for a total award of at least $226,000; (b) hold the Foster Parties in civil contempt of court unless and until they comply with their outstanding postjudgment discovery obligations; and (c) issue a bench warrant for Defendant Andrew Foster's arrest.

Respectfully submitted,

Judd B. Grossman

Enclosure