THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **ARTWIDE INTERNATIONAL H.K. LIMITED,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ANDREW FOSTER, et al.,**<br><br>**Defendants.** | Civil No. 22-6417 (CPO/EAP) |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff Artwide International H.K. Limited's May 2, 2025 letter application, ECF No. 45, seeking contempt sanctions pursuant to Federal Rules of Civil Procedure 45(g) and 69, for Defendants' failure to comply with Plaintiff's efforts to enforce its nearly $200,000 judgment.  For the following reasons, the Court respectfully recommends that Defendants Andrew Foster and Genesis 8 Holdings LLC ("Genesis 8") (collectively, "Defendants") and nonparty Abraham Foster be held in contempt and sanctioned in the form of Plaintiff's attorneys' fees and costs incurred in connection with enforcing its judgment.  The Court further recommends that bench warrants be issued for Andrew Foster and Abraham Foster's arrest and incarceration until they comply with Plaintiff's discovery requests and satisfy the attorneys' fees and costs recommended herein, or until they demonstrate, by clear and convincing evidence, an inability to pay.  The Court decides this matter pursuant to 28 U.S.C. § 636(b)(1)(b) and (C) in light of the dispositive nature of the requested sanctions.  The Court makes the following findings in support.

**FACTUAL BACKGROUND**

Plaintiff brought this action against Defendants for conversion and unjust enrichment. ECF No. 1, Complaint ("Compl."). Defendant Andrew Foster is the "sole member and employee of Genesis 8." *Id.* ¶ 4. On or about March 31, 2022, Plaintiff entered into an agreement on behalf of a third-party buyer to purchase a painting for $133,333 from Defendants, who represented a third-party owner. *Id.* ¶ 10. Plaintiff alleges that Defendants falsely represented to Plaintiff that the painting's owner requested payment immediately or else the owner would cancel the sale. *Id.* ¶ 11. Plaintiff sent a $107,500 advance to Genesis 8 to ensure that the sale would go through. *Id.* ¶ 12. On April 15, 2022, Plaintiff mistakenly paid Genesis an additional $133,333—the full price of the painting—instead of the remaining balance of $25,833, thus resulting in total payments of $240,833. *Id.* ¶ 13. Despite receiving full payment, Defendants never delivered the painting to Plaintiff. *Id.* ¶ 14. Several weeks later, Defendants demanded that Plaintiff agree to a "Non-resell Agreement" as a condition prior to the release of the painting to Plaintiff, even though Defendants had not previously sought to impose any resale restriction. *Id.* ¶¶ 15-16. Plaintiff refused to agree to this post-hoc condition and canceled the sale. *Id.* ¶ 17. After cancellation, Defendants reimbursed Plaintiff $50,000 out of the $240,833 that Plaintiff paid. *Id.* ¶ 20. Defendants have failed to reimburse the remaining $190,833. *Id.* ¶ 21.

On November 2, 2022, Plaintiff filed this lawsuit for conversion and unjust enrichment. *Id.* ¶¶ 30-35. Following numerous unsuccessful efforts to serve Defendants, the Court entered an Order permitting Plaintiff to effect service by alternate means on the Defendants by: (1) mailing a copy of the summons and complaint by registered or certified mail for Defendant Andrew Foster, to Abraham Foster, Defendant's father, at 68 Tiffany Lane, Willingboro, New Jersey 08046; and (2) emailing a copy of the summons and complaint to Andrew Foster's email address, drew@gen8holdings.com. ECF No. 7, Order at 4. The Court also ordered alternative service on

Defendant Genesis 8 by mailing a copy of the summons and complaint by registered or certified mail and regular mail to Genesis 8's principal place of business at 68 Tiffany Lane, Willingboro, New Jersey 08046. *Id.* at 4-5.

On May 30, 2023, Plaintiff moved for default judgment as to both Defendants, seeking $190,833 in compensatory damages. ECF No. 10, Mot. for Default J. On November 21, 2023, the Court entered judgment against Genesis 8 in the amount of $190,833 but denied default judgment as to Andrew Foster because Plaintiff had not provided a sufficient basis for piercing the corporate veil. ECF No. 17, Order at 3.

## CERTIFICATION OF FACTS IN SUPPORT OF CONTEMPT

Pursuant to Federal Rule of Civil Procedure 45(g), "[t]he issuing court . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). The contempt authority of the United States Magistrate Judge is governed by 28 U.S.C. § 636(e). In a civil matter, such as this one, where the parties have not consented to magistrate judge jurisdiction, § 636(e)(6)(B) provides that upon commission of an act that constitutes civil contempt:

> [T]he magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B)(iii).

"'[U]nder the statute, the magistrate judge's certification of facts seems designed to serve the function of a charging instrument or pleading for a trial to be held before the district judge.'" *Wallace v. Kmart Corp.*, 687 F.3d 86, 90 (3d Cir. 2012) (quoting *Taberer v. Armstrong World*

3

*Indus., Inc.*, 954 F.2d 888, 903 (3d Cir. 1992)).  Once the facts are certified, "[t]he statute clearly specifies that the order to show cause shall require the alleged contemnor to appear before a judge of the district court, who hears the evidence, . . . and decides whether to impose punishment." *Taberer*, 954 F.2d at 903.

In accordance with 28 U.S.C. § 636(e), the Court certifies the following facts for the District Judge's consideration:

1. Andrew Foster is the sole employee and member of Genesis 8 Holdings LLC. Compl. ¶ 4.  Abraham Foster, Defendant's father, is a nonparty.  ECF No. 27, Decl. of Webster McBride ("McBride Decl.") ¶ 3.

2. On December 14, 2023, in an effort to collect on its default judgment, and pursuant to the Court's March 24, 2023 Order,[1] Plaintiff served Defendant Andrew Foster with discovery requests via email at Defendant Andrew Foster's email address, drew@gen8holdings.com.  ECF No. 22, Aff. of Webster D. McBride ("McBride Aff.") ¶ 1.  On December 15, 2023, Plaintiff served Defendant Andrew Foster with the discovery requests via certified mail and ordinary mail to Abraham Foster's address at 68 Tiffany Lane, Willingboro, New Jersey 08046.  *Id.* ¶ 2.  On the same day, Plaintiff served Defendant Genesis 8 with the discovery requests via certified mail and ordinary mail to its principal place of business, which is listed at Abraham Foster's home address.  *Id.* ¶ 3.

3. On December 18, 2023, Plaintiff served a subpoena *duces tecum* on nonparty Abraham Foster at his home address.  ECF No. 21, Affidavit of Julie Zaun; McBride Aff. ¶ 3.

4. As of December 20, 2023, the United States Postal Service's package tracking

---

[1] The Court granted Plaintiff leave to effect service on Defendant Andrew Foster via email and certified mail but denied without prejudice Plaintiff's request to effect service via cell phone. ECF No. 7.

4

system showed that someone at Genesis 8's address refused the documents, and as a result, the documents were returned.  ECF No. 22, McBride Aff. ¶ 4.

5. As of January 10, 2024, the United States Postal service returned the documents sent to Defendant Andrew Foster via ordinary mail with the following stickers: "return to sender, refused, unable to send forward, and return to sender." *Id.* ¶ 5.  Similarly, as of January 19, 2024, the United States Postal Service's package tracking system showed that documents sent to Defendant Andrew Foster via his father, Abraham Foster, could not be delivered and were returned to the sender. *Id.* ¶ 6.

6. Andrew Foster "did not appear for his deposition noticed for February 6, 2024, did not produce any documents in response to Plaintiff's discovery requests, did not serve any objections or responses to those requests, did not communicate with Plaintiff or its counsel in response to those requests, and did not offer any excuse for his noncompliance." ECF No. 27, McBride Decl. ¶ 4.

7. Likewise, Genesis 8 "did not appear for its deposition noticed for February 7, 2024, did not produce documents or serve objections in response to Plaintiff's discovery requests, and did not communicate with Plaintiff or its counsel or offer any excuse for noncompliance." *Id.* ¶ 5.

8. Nonparty Abraham Foster did not respond to the subpoena, produce any documents, serve any objections, communicate with Plaintiff or its counsel, or "offer any excuse for his noncompliance." *Id.* ¶ 6.

9. Indeed, each of the four packages of discovery demands mailed to Defendants was returned to sender with a sticker indicating that it had been "REFUSED." *Id.* ¶ 7.

10. After Defendants failed to respond, Plaintiff filed a motion seeking: (i) an order directing "Defendants and nonparty Abraham Foster to appear before the Court under threat of

contempt"; (ii) a default judgment against Defendant Andrew Foster; and (iii) an order directing nonparty Abraham Foster to produce documents responsive to Plaintiff's subpoena *duces tecum*. ECF No. 25, Pl.'s Contempt Motion. On June 4, 2024, the Court directed Defendant Foster and nonparty Abraham Foster to appear in person and show cause why the Court should not impose sanctions for their failure to respond to Plaintiff's discovery requests. ECF No. 30, Order. Copies of this Order were served on Andrew and Abraham Foster. ECF No. 31, Affidavit of Maria Angela Brusco ¶¶ 1-2. Neither Defendant Foster nor Abraham Foster appeared for the show-cause hearing. ECF No. 35, Minute Entry.

11. Consequently, on June 27, 2024, the Court entered a second Order to Show Cause for Defendant Andrew Foster and nonparty Abraham Foster to appear in court on July 30, 2024, to explain their failure to respond to the discovery requests. ECF No. 37, Order. The Order warned that "[f]ailure to appear in response to this Order to Show Cause may result in the imposition of sanctions, up to and including a recommendation for contempt and the entry of a default judgment." *Id.* ¶ 1. On the same day, the Court also ordered Defendants to respond to Plaintiff's discovery requests and subpoena *duces tecum* and to appear for their respective depositions. ECF No. 38, Order ¶¶ 2-4.

12. On July 1, 2024, Plaintiff served the Court's June 27, 2024 Order to Show Cause on Defendant Andrew Foster via certified and regular mail, and the next day, service of same by email. ECF No. 39, Affidavit of Maria Angela Brusco ¶ 1. On July 1, 2024, Plaintiff served a copy of the June 27, 2024 Order to Show Cause on nonparty Abraham Foster by certified and regular mail. *Id.* ¶ 2. And on July 1, 2024, Plaintiff served notices of deposition on Andrew Foster and Genesis 8. *Id.* ¶ 3.

6

13. Neither Defendant appeared at the second show-cause hearing scheduled for July 30, 2024. ECF No. 40, Minute Entry.

14. On March 24, 2025, the Court ordered Defendant Andrew Foster and non-party Abraham Foster to file a written response to the Order to Show Cause, indicating why they should not be held in civil contempt pursuant to Federal Rules of Civil Procedure 45(g) and 69. ECF No. 41, Order. The Order specifically advised that "failure to respond to this order may result in a finding of contempt and the imposition of sanctions, including but not limited to monetary penalties, attorney's fees, and other appropriate relief sought by Plaintiff." *Id.*

15. Again, neither Andrew Foster nor Abraham Foster responded. The Court directed Plaintiffs to advise of the status of the case and to identify what post-judgment discovery remained outstanding. ECF No. 42, Order.

16. Plaintiff filed a letter on April 3, 2025, detailing the complicated history of Defendants' contempt and noting that "Defendants have continued to publicly flaunt their wealth" on social media sites by posting pictures of "private jet interiors, swimming pools and palm trees, gourmet meals in luxury hotel rooms, and the Dubai skyline." ECF No. 43, Pl.'s Ltr. at 2; *see also* ECF No. 27, McBride Decl. ¶ 8 (screenshots from Andrew Foster's Instagram account showing the above). Based on that recitation, the Court directed Plaintiff to file a letter and supporting certification setting forth its proposed sanctions and detailing the damages it has incurred in attempting to collect on the outstanding judgment. ECF No. 44, Order.

17. On May 2, 2025, Plaintiff submitted a letter and declaration seeking: (a) an award of legal fees and costs; (b) contempt sanctions in the amount of a two times multiplier of attorneys' fees; and (c) issuance of a bench warrant for Defendant Andrew Foster's arrest. ECF No. 45, Pl.'s Ltr. at 3.

## ANALYSIS

A. **Whether a Finding of Contempt is Appropriate**

"Civil contempt is a means by which the Court may, if necessary, ensure that its discovery orders are obeyed." *Andrews v. Holloway*, 256 F.R.D. 136, 140 (D.N.J. 2009) (citing Fed. R. Civ. P. 37(b)(1) & (b)(2)(A)(vii)). "'It vindicate[s] the District Court's authority over a recalcitrant litigant.'" *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 691 (1978)). "'[C]ivil contempt may be employed to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.'" *Id.* at 140-41 (quoting *McDonald's Corp. v. Victory Invs.*, 727 F.2d 82, 87 (3d Cir. 1984)).

For a party to be held in civil contempt, the movant must show that three factors (*i.e.*, the *Harris* factors) are satisfied: "(1) a valid court order existed, (2) the [alleged contemnor] had knowledge of the order, and (3) the [alleged contemnor] disobeyed the order." *John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (quoting *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995)); *see also Andrews*, 256 F.R.D. at 141 (citing *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990)). "These elements must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged with contempt." *United States v. Baker Funeral Home, Ltd.*, 196 F. Supp. 3d 530, 549 (E.D. Pa. 2016) (citing *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994)). "The burden then shifts to the alleged contemnors to show why they were unable to comply with the order." *FTC v. Lane Labs-USA, Inc.*, No. 00-3174, 2011 WL 5828518, at *2 (D.N.J. Nov. 18, 2011) (citing *FTC v. Affordable Media,* LLC, 179 F.3d 1228, 1239 (9th Cir. 1999)).

Notably, a court should not find contempt "[w]here there is any reason to doubt the wrongfulness of the [alleged contemnor's] conduct." *Id.* at *2 (citing *John T. ex rel. Paul T.*, 318

8

F.3d at 552). However, "'[w]illfulness is not an element of contempt, nor does evidence of good faith bar a conclusion that a defendant acted in contempt." *Id.* (citing *Robin Woods Inc.*, 28 F.3d at 399).

Here, clear and convincing evidence substantiates all three *Harris* factors. As set forth in detail above, following Defendants and Abraham Foster's repeated disregard of Plaintiff's discovery requests,[2] the Court issued several orders to show cause. The June 4, 2024 Order directed Andrew and Abraham Foster to appear in Court to explain their failure to participate in discovery. Despite Plaintiff's service of this Order, Defendants and Abraham Foster failed to appear. On June 27, 2024, the Court again ordered Andrew and Abraham Foster to appear to show cause for their failure to respond to discovery. And again, despite proper service, they failed to appear. Finally, on March 4, 2025, the Court issued an Order directing Defendants and Abraham Foster to show cause for why they should not be held in civil contempt. Despite proper service, they failed to respond or explain why contempt should not be imposed. Indeed, to date, neither Defendants nor Abraham Foster have provided any submission to this Court justifying their lack of participation.

In short, Plaintiff has established the existence of three valid Court orders of which Defendants and Abraham Foster had knowledge and with which Defendants and Abraham Foster refused to comply. In doing so, Defendants and Abraham Foster thrice forfeited their opportunity to explain why they should not have to respond to discovery and why the Court should not find them in civil contempt. Because there is no reason to doubt the wrongfulness of their conduct, a

---

[2] The Court previously determined that the discovery Plaintiff sought from Defendants was appropriate in scope. *See* ECF No. 38, Order, at 2 n.3. Likewise, the Court found that Plaintiff's discovery requests were appropriate and that Plaintiff's subpoena *duces tecum* was properly served on nonparty Abraham Foster and therefore, was enforceable. *Id.*

holding of civil contempt constitutes the only measure by which the Court can exercise authority over these litigants and compensate Plaintiff for its efforts in attempting to enforce its judgment.

**B.      Sanctions**

The question of appropriate sanctions remains.  In exercising its discretion to fashion a remedy, the Court remains mindful that "[s]anctions for civil contempt serve two purposes: 'to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *Marshak v. Treadwell*, 595 F.3d 478, 494 (3d Cir. 2009) (cleaned up). Sanctions for civil contempt are "penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).  When determining sanctions for civil contempt, a district court may impose a wide range of penalties, including incarceration, fines, or a reimbursement of costs to the complainant. *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991) ("Indeed, district courts have broad discretion to fashion an appropriate civil contempt remedy."); *see also  Allenwood Circle Exxon v. BMG Exterior Renovations LLC*, No. 23-21993, 2024 WL 5399253, at *4 (D.N.J. Nov. 18, 2024) (finding that once civil contempt is found, the court "'may impose a wide range of penalties, including incarceration, fines, or a reimbursement of costs'" to the aggrieved party (quotation omitted)).

As set forth above, Plaintiff seeks three forms of sanctions:  (a) attorneys' fees incurred in enforcing the judgment; (b) a two-times multiplier of attorneys' fees as a penalty; and (c) the issuance of a bench warrant.  ECF No. 45, Pl.'s Ltr at 3.  The Court considers each proposed sanction individually.

1.  Attorneys' Fees

"[A]ttorneys' fee awards are 'remedial and designed to compensate complainants for losses incurred as a result of the contemnors' violations.'" *Robin Woods Inc.*, 28 F.3d at 401 (quoting *Operation Rescue*, 919 F.2d at 869). "As such, an award of attorneys' fees in a contempt proceeding, 'must not exceed the actual damages caused the offended party by a violation of the court's order.'" *Cardionet, LLC v. Mednet Healthcare Techs., Inc.*, 146 F. Supp. 3d 671, 698 (E.D. Pa. 2015) (quoting *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir. 1982)). Rather, when awarding attorneys' fees, a court must utilize the "lodestar method," which requires the attorneys' billing rate to be considered in light of prevailing market rates and that the reported hours were reasonably expended for each of the particular purposes described therein. *Pa. Env't Def. Found. v. Canon-McMillian Sch. Dist.*, 152 F.3d 228, 231-32 (3d Cir. 1998); *see also Microsoft Corp. v. United Comput. Res. of N.J., Inc.*, 216 F. Supp. 2d 383, 387 (D.N.J. 2002). "To meet its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed." *Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556, 561 (D. Del. 2019) (cleaned up). Once the fee petitioner satisfies this burden, a court presumes that the lodestar is the reasonable fee. *Id.*

Here, Plaintiff's Director, Jean-Michel Melmedjian de Rus, has attested that "[s]ince entry of the Judgment, Artwide has incurred substantial financial costs attempting to collect on the sum due, including legal fees in connection with (i) post-judgment discovery requests, (ii) affidavits and writs of execution, (iii) a motion for contempt and sanctions, (iv) counsel's appearance at multiple court conferences; and (v) parallel pending state criminal investigation into Defendants' conduct here[.]" ECF No. 45-1, Affidavit of Jean-Michel Melmedjian de Rus ("Melmedjian de Rus Aff.") ¶ 5. Mr. Melmedjian de Rus further represents that, to date, "[Plaintiff] has paid its

counsel here $59,594.12 in legal fees in connection with this matter, as well as an additional $2,783.60 in expenses largely comprising costs of third-party process servers." *Id.* ¶ 6. In addition, he states that Plaintiff has been billed "an additional approximately $50,000 in legal fees that [it] ha[s] not yet paid, but intend[s] to pay upon any recovery." *Id.*

While the Court recommends that Defendants and Abraham Foster be compelled to pay Plaintiff's reasonable attorneys' fees incurred since the imposition of judgment and in connection with Plaintiff's efforts to collect on that judgment, Plaintiff's request for "approximately $113,000," ECF No. 45, Pl.'s Ltr. at 3, is insufficiently substantiated. As such, the Court recommends that Plaintiff submit attorney billing records that detail the hourly rate paid and the amount of time spent on each relevant task, along with bills from each of the third-party process servers that it seeks recover. From those submissions, the Court will be able determine the appropriate lodestar amount to which Plaintiff is entitled.

2. <u>Two-Times Multiplier of Attorneys' Fees</u>

Plaintiff next seeks a two-times multiplier on attorneys' fees. As noted above, the Third Circuit has advised that "attorneys' fee awards are 'remedial and designed to compensate complainants for losses incurred as a result of the contemnor[s'] violations." *Robin Woods Inc.*, 28 F.3d at 401 (quoting *Operation Rescue*, 919 F.2d at 869). As such, an award of attorneys' fees in a contempt proceeding, "must not exceed the actual damages caused by the offended party by a violation of the court's order." *Quinter*, 676 F.2d at 975 (citations omitted). When imposing civil sanctions, the Third Circuit advises courts to "'apply the least coercive sanction . . . reasonably calculated to win compliance with its orders.'" *In re Vaso Active Pharms., Inc.*, 514 B.R. 416, 423 (Bankr. D. Del. 2014) (quoting *In re Grand Jury Impaneled Jan. 21, 1975*, 529 F.2d 543, 551 (3d Cir. 1976)).

12

Applying these principles here, the Court declines to recommend a multiplier on the attorneys' fee award. Any such multiplier would be punitive rather than coercive or compensatory in nature and would exceed the actual damages caused by Defendants. Accordingly, no such multiplier is recommended at this time. Defendants are cautioned, however, that the Court recommends that the District Court keep open the possibility of fines in the event of their continued non-compliance.

### 3. Bench Warrant

Finally, Plaintiff seeks the issuance of a bench warrant for Andrew and Abraham Foster to ensure future compliance with the Court's orders. "'Th[is] paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" *United States v. Harris*, 582 F.3d 512, 517 (3d Cir. 2009) (quoting *Bagwell*, 512 U.S. at 828). "When incarceration is imposed as a civil sanction, the purpose is not punishment." *In re Free*, 466 B.R. 48, 62 (Bankr. W.D. Pa. 2012) (citing *Latrobe Steel v. United Steelworkers of Am., AFL-CIO*, 545 F.2d 1336, 1344 (3d Cir. 1976)). Instead, confinement is imposed to compel compliance with a court's order and may be for an indefinite period to achieve that end. *See id.* (citing *Latrobe Steel,* 545 F.2d at 1344); *see also Laborers Loc. Union Nos. 472 & 172 v. Lucas Constr. Grp., Inc.*, No. 23-2825, 2024 WL 3568735, at *3 (D.N.J. July 29, 2024).

"Optimistic that confinement is unnecessary to ensure compliance with a court order, many courts have imposed daily fines for each day after the individual in contempt failed to respond to a subpoena." *Ojo v. Brew Vino, LLC*, No. 20-661, 2024 WL 454940, at *6 (M.D. Pa. Feb. 6, 2024) (collecting cases). Where, however, the imposition of fines is not calculated to lead to compliance,

13

a court may impose an incarceration sanction, taking the form of imprisonment for a fixed term, provided that the contemnor has the option of earlier release if he complies. *Shillitani v. United States,* 384 U.S. 364, 370 & n.6 (1966) (upholding as a civil contempt sanction "a determinate sentence which includes a purge clause"). To purge himself from contempt and thus avoid or terminate his confinement, the contemnor need only comply with the contempt order or show that he is presently unable to comply with it. *United States v. Rylander,* 460 U.S. 752, 757, 761 (1983).

Notwithstanding, courts should "tread carefully" where the potential remedy is incarceration. *Andrews v. Holloway*, 256 F.R.D. 136, 149 (D.N.J. 2009) (citing *Ne. Women's Ctr., Inc.*, 939 F.2d at 70). Andrew and Abraham Foster's history of noncompliance substantiates issuance of bench warrants. Indeed, at the risk of redundancy, a brief recap of that history is warranted.

Plaintiff filed this lawsuit approximately two and a half years ago. ECF No. 1, Compl. On November 29, 2023, after a year of litigation—and in the face of no response from Defendants—the Court entered a judgment against Genesis 8 in the amount of $190,833. ECF No. 19, Order and Judgment. Thereafter, Plaintiff served discovery requests: (a) on Defendant Andrew Foster via email; (b) on Defendant's father, Abraham Foster, via certified and ordinary mail to 68 Tiffany Lane Willingboro, New Jersey 08046; and (c) on Defendant Genesis 8 to Abraham Foster's home address (its principal place of business). Plaintiff also served a subpoena *duces tecum* on Abraham Foster at his home address. ECF Nos. 20, 21, 22. All discovery requests that Plaintiff sent to Defendants or Abraham Foster were refused, returned, or marked unable to move forward. *See* ECF No. 22, McBride Decl. ¶¶ 4-6. Plaintiff then filed a motion for a contempt conference, for sanctions, and to compel. ECF No. 25, Motion for Contempt. The Court then issued three Orders to Show Cause, ECF Nos. 30, 37, 41, all of which were served upon Defendants and Abraham

Foster and all of which were met with silence. ECF Nos. 35, 40, 42. Thereafter, via an April 3, 2025 letter, Plaintiff set forth Defendants' history of contempt for the Court's rulings, including the fact that Defendant Andrew Foster had been "publicly flaunt[ing] [his] wealth" by posting Instagram pictures of himself in an upscale New York City restaurant, competing in a high-stakes poker tournament in Atlantic City, in private jets, and at luxury resorts in Dubai. ECF No. 43, Pl.'s Ltr. at 2.

Based on this record, Defendants and Abraham Foster have been given ample notice and opportunity to comply with Plaintiff's discovery requests and this Court's Orders. Nonetheless, they have effectively thumbed their nose at this Court's authority. Issuance of a finding of contempt coupled with an award of attorneys' fees and/or fines is likely to be greeted with the same response—nothing. While remaining cognizant that confinement is a drastic sanction that should be invoked sparingly, the Court finds that it appears to be the only option to ensure compliance. Of course, Defendants and Abraham Foster will have the option to avoid or terminate confinement by either complying with the contempt order or showing by clear and convincing evidence that they are unable to comply. Until that time, however, the Court recommends the issuance of bench warrants for Defendant Andrew Foster and nonparty Abraham Foster.

## **RECOMMENDATION**

The Court respectfully recommends that the District Court enter an Order finding Defendants and nonparty Abraham Foster in civil contempt and requiring them to pay Plaintiff's attorneys' fees in an amount to be determined. In addition, the Court recommends that bench warrants be issued for Defendant Andrew Foster and nonparty Abraham Foster's arrest and civil confinement until such time as they purge their contempt. Finaly, the Court recommends that the

District Judge leave open the possibility of the imposition of fines in the event of continued non-compliance.

 Any objections to this Report and Recommendation must be filed within fourteen (14) days of service pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Civil Rule 72.1(c)(2).

               s/Elizabeth A. Pascal
               ELIZABETH A. PASCAL
               United States Magistrate Judge

cc: Hon. Christine P. O'Hearn, U.S.D.J.

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **ARTWIDE INTERNATIONAL H.K. LIMITED,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ANDREW FOSTER, et al.,**<br><br>**Defendants.** | Civil No. 22-6417 (CPO/EAP) |

### **PROPOSED ORDER**

This matter having come before the Court *sua sponte* by way of Plaintiff's May 2, 2025 letter seeking a finding of contempt, ECF No. 45; and the Court having held two on-the-record show-cause hearings on June 27, 2024, and July 30, 2024, ECF Nos. 35, 40; and the Court having directed Defendants and non-party Abraham Foster to file a written response to the March 4, 2025 Order to Show Cause; and Defendants and nonparty Abraham Foster having failed to appear for either hearing or to respond to the March 4, 2025 Order to Show Cause; and the Court having considered the Report and Recommendation of United States Magistrate Judge Elizabeth A. Pascal, submitted pursuant to 28 U.S.C. § 636(b)(1)(B) and (C); and the parties having been notified of their right to serve objections within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Civil Rule 72.1(c)(2); and upon consideration of those objections, if any; and the Court finding that the Report and Recommendation is neither clearly erroneous nor contrary to law; and for good cause shown:

**IT IS** on this _____ day of _____ 2025,

**ORDERED** that the Report and Recommendation is **ADOPTED**; and it is further

**ORDERED** that Defendants Andrew Foster and Genesis 8 Holdings LLC, and nonparty Abraham Foster are held in **CONTEMPT OF COURT**; and it is further

**ORDERED** that within **fourteen (14) days** from the date of this Order, Plaintiff shall submit attorney billing records detailing the hourly rate paid and the amount of time spent on each relevant task, along with bills from each of the third-party process servers that it seeks to recover; and it is further

**ORDERED** that Defendants and Genesis 8 Holdings LLC shall pay Plaintiff's reasonable attorneys' fees and costs, in an amount to be determined, in connection with Plaintiff's efforts to enforce judgment against Defendants; and it is further

**ORDERED** that a bench warrant be issued for Defendant Andrew Foster and nonparty Abraham Foster's arrest and civil confinement until such time as they purge their contempt.

_____
CHRISTINE P. O'HEARN
UNITED STATES DISTRICT JUDGE